THE STATE OF KANSAS, on *the relation of S. B. Bradford, Attorney General,* v. JOHN B. ROBERTSON *et al.*

1. COUNTIES — *Boundaries — Valid Statute.* Chapter 37, Laws of 1886, entitled "An act to restore or re-create and define the boundaries of the counties of Seward, Stevens and Morton, in the state of Kansas, and repealing all former laws relating to boundaries thereof," *held,* to have been legally passed and approved, and therefore valid. (*Comm'rs of Leavenworth Co. v. Higginbotham,* 17 Kas. 62; *The State v. Francis,* 26 id. 731; *Weyand v. Stover,* 35 id. 545.)

2. NEW COUNTIES — *Organization — Duty of Census-Taker.* The object of appointing a census-taker, in the organization of new counties, is to ascertain the truth of the statements contained in the memorial presented to the governor; and in ascertaining the names and ages of the *bona fide* inhabitants of an unorganized county, the census-taker should confine himself to those who were *bona fide* inhabitants in the county at the time of the presentation of the memorial.

3. ——— *Defective County Organization, Cured.* The defective organization of Stevens county, of August, 1886, was cured by the recognition of the legislature of the organization of that county, by chapters 133 and 147, Laws of 1887. (*The State v. Comm'rs of Pawnee Co.,* 12 Kas. 426.)

*Original Proceeding in Quo Warranto.*

THE facts are stated in the opinion herein, filed at the session of the court in March, 1889.

*A. M. Mackey,* and *S. N. Wood,* for plaintiff.

*J. L. Pancoast, John G. B. Hall, W. B. Lawrence,* and *Lauck & Orner,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This is an original action in this court in the nature of *quo warranto.* The purpose of the action is to disorganize the county of Stevens on two grounds: 1st. The invalidity of chapter 37 of the Laws of 1886, entitled "An act to restore or recreate and define the boundaries of the counties of Seward, Stevens, and Morton, in the state of Kansas, and repealing all former laws relating to the boundaries thereof;" 2d. Fraud in taking the census of the county, and in the return thereof made to the governor.

On the 24th of May, 1886, there was presented to the governor a memorial in writing purporting to have been signed by 455 householders, who were alleged at the time to be legal electors and residents of Stevens county—an unorganized county; the memorial purported to show that there were 2,500 *bona fide* inhabitants in the county; and that 400 of them were householders. The memorial prayed that the county might be organized, and was accompanied by the affidavit of five persons to the effect that the signatures attached to the memorial were the genuine signatures of householders and *bona fide* residents of the county, residing therein for six months; and to the further effect that there were 2,500 *bona fide* inhabitants in the county. After the memorial had been filed in the office of the governor and considered by him, he appointed, on May 24, 1886, J. W. Calvert to take the census of the county, and determine the number of *bona fide* inhabitants therein. On the 2d of June, 1886, Calvert commenced to take the census of the county, and completed the same on the 30th of July, 1886, and on the 3d of August, 1886, made his return thereof, verified by his oath, to the governor; his return, upon its face, purported to show that there were 2,662 *bona fide* inhabitants within the county; that

868 of the number were householders, and 627 of the number voters. On the 3d of August, 1886, in accordance with the provisions of the statute relating to the organization of new counties, the governor appointed J. B. Robertson, H. O. Wheeler, and J. S. Chamberlain to act as county commissioners of Stevens county; J. W. Calvert to act as county clerk of the county; and designating Hugoton to be the temporary county seat of the county. All of these persons qualified on the 5th of August, 1886. The petition in this case was filed August 31, 1886, but the summons that was actually served was issued October 5, 1886, and returned with service October 15, 1886. John B. Robertson and H. O. Wheeler, two of the defendants, ceased to act as commissioners on September 13, 1886, having been succeeded in office by other persons, elected September 9, 1886.

It is contended that chapter 37 of the Laws of 1886 is invalid for the following reasons: 1st. Because the president of the senate and the speaker of the house of representatives failed to sign the enrolled bill; 2d. Because the enrolled bill and the house journal do not agree as to the dates that the bill was presented and passed; 3d. Because the name of the county of Kansas, which appeared in the original bill presented to the house, was never, by vote or otherwise, legally changed to Morton; 4th. Because it is alleged that the act of 1886, which regularly passed both houses of the legislature of 1886, relating to Seward, Stevens and other counties, was lost, and that another bill, which had never passed the legislature, was surreptitiously substituted in its place; that this surreptitious bill was approved by the governor, and subsequently enrolled. The enrolled bill is known as "House bill No. 39," and the house journal shows that it originated in the house January 20, 1886; that the bill was read the second time on January 21st, and referred to the committee on county seats and county lines; that the committee, on the 29th of January, reported the bill back, with various amendments, and recommended its passage; that on February 17th the bill was again before the house, and on motion of Mr. Smith, of McPherson, all after

§ 4 to § 16 was stricken out, leaving in the bill only the counties of Seward, Stevens, and Kansas; that the bill after having been amended, passed by a vote of 72 yeas to 31 nays; that subsequently its title was agreed to; that on February 18th it was engrossed and sent to the senate. As originally presented, the bill was entitled "An act to restore or re-create and define the boundaries of the counties of Seward, Stevens, Kansas, etc." The engrossed bill was messaged to the senate as "House bill No. 39, An act to restore and re-create certain counties therein named." Subsequently, H. B. Kelly called for the reading of house messages, and the senate journal shows that thereupon house bill No. 39, "An act to restore or re-create and define the boundaries of the counties of Seward, Stevens, Kansas, etc.," was read the first time; an emergency was declared, and the bill was read the second time; an emergency was again declared, and house bill No. 39 was read the third time and placed upon its final passage, subject to amendment and debate. Soon after, it passed the senate by a vote of yeas 24, nays 8. The title was then agreed to. The house journal shows that it was returned to the house from the senate on February 18th as "House bill No. 39, An act to restore or re-create certain counties therein named;" and that, on February 18, the house committee on enrolled bills reported that they had compared the engrossed copy of "House bill No. 39, An act to restore or re-create and define the boundaries of the counties of Seward, Stevens and Morton, in the state of Kansas, and repealing all former laws relating to the boundaries thereof," with the enrolled bill, and that the same was correctly enrolled. It also reported that the bill was properly signed by the officers of the house and senate.

While there are some discrepancies or irregularities connected with the history of House bill No. 39, we do not think

1. Counties—boundaries—valid statute.

that any of these discrepancies or irregularities render the act void, and, considering all of the evidence, we do not think there is any room to doubt but that the act was regularly passed and approved; and we

do not think, from the evidence, that the original act was lost
after its passage and another bill surreptitiously substituted
in its place. (*Weyand v. Stover*, 35 Kas. 545.)   "The enrolled
statute is very strong presumptive evidence of the regular
passage of the act and of its validity, and is conclusive evi-
dence of such regularity and validity, unless the journals of
the legislature show clearly and conclusively, and beyond all
doubt, that the act was not passed regularly and legally."
(*The State v. Francis*, 26 Kas. 731.)   The signatures of the
presiding officers of the house and senate are not absolutely
essential to the validity of the act.   Such signatures are only·
portions of the many evidences of the due passage and validity
of the act; and an act may be valid although the signatures
of the presiding officers are omitted. (*Comm'rs of Leaven-
worth Co. v. Higginbotham*, 17 Kas. 62.)   We do not think
that the act can be void because there is a discrepancy between
the journals of the house as to the origin and passage of the
bill and the enrolled bill itself.   The journals show the pro-
ceedings of the legislature, and the dates entered upon the
enrolled bill as to its origin and passage are evidently clerical
mistakes only.   The name of the county of Kansas may have
been changed to the county of Morton in the open house,
without the journals showing the change or amendment.   "If
there is any room to doubt as to what the journals of the leg-
islature show; if they are merely silent or ambiguous, or if
it is possible to explain them upon the hypothesis that the en-
rolled statute is correct and valid, then it is the duty of the
courts to hold the enrolled statute is valid." (*The State v.
Francis*, supra.)   Further than this, without passing upon
the validity of chapter 2 of the Laws of 1887, we call atten-
tion to its provisions.   This act was passed at the session fol-
lowing that which passed chapter 2, Laws of 1886.   Many
of the members of the house of the session of 1886 were
members of the session of 1887; the members of the senate
were the same in both sessions.   It must have been person-
ally known to a large number of the members of the house

and to every member of the senate, whether chapter 37 of the Laws of 1886 passed their respective bodies. Said chapter 2 of the Laws of 1887 recites that chapter 37 of the Laws of 1886 was regularly passed by a constitutional majority of both houses of the legislature; that the name of the county of Kansas was changed to Morton after due consideration and a vote of the house of representatives had thereon, without a record of such action being made on the journal thereof; and that the enrolled bill fails to show the correct date of its origin and passage.

An examination of all of the evidence in the case satisfies us that there were not 2,500 *bona fide* inhabitants in the county of Stevens as stated in the memorial presented to the governor, and that the census-taker did not make to the governor a just and true return of the number of inhabitants in the county at the date of the presentation of the memorial to him. (See note 1.) Therefore, if there had been no subsequent recognition, by the legislature, of the organization of the county proclaimed by the governor, we would be compelled to grant the prayer of the petition; but there was a complete organization *de facto* prior to 1887. After the proclamation of the governor of the 3d of August, 1886, there was a full set of county officers in the county, with all the paraphernalia of a legally-organized county. From that time up to the present, it has exercised all of the powers and duties of a legally-organized county. (*The State v. Comm'rs of Pawnee Co.*, 12 Kas. 426.) By chapter 2, Laws of 1887, the organization of the county was legalized and made valid; but even if the constitutionality of that act were in doubt, the defective organization of the county was cured by chapter 133, Laws of 1887, which recognized the county as organized by attaching Grant county to it for judicial purposes, and by chapter 147, Laws of 1887, detaching it from Finney county for judicial purposes, and placing it in the 27th judicial district and authorizing courts to be held therein. (*The State v. Comm'rs of Pawnee Co.*, supra.) As the county was organized in August, 1886, upon a false and insufficient census, but as its defective

3. Defective county organization, cured.

"organization has been cured by legislative recognition since the commencement of the action, the prayer of the petition will be denied. The costs, however, will be divided. The plaintiff will recover all costs against Stevens county which accrued prior to the approval by the governor on March 5, 1887, of chapters 133 and 147, Laws of 1887, recognizing the organization of Stevens county as valid. The defendants will recover all costs which have accrued subsequent to that date.

With this conclusion, it is unnecessary to determine whether the defendants, John B. Robertson and H. O. Wheeler, are proper parties to the action — no personal judgment for costs will be rendered against either of them.

All the Justices concurring.

NOTE 1. In the action of *The State of Kansas, ex rel., v. S. S. Prouty*, census-taker of Kearney county, at the July session of this court for 1887, it was decided that those persons who were entitled to express their preferences, on the census return, for the temporary county seat of the county, were those only who are legal electors of the county at the time the memorial to the governor was filed. (Journal "M" of the Supreme Court, page 146, July term, 1887.)