# Barksdale Hamlett, Superintendent of Public Instruction v. James B. McCreary, Governor, et al.

(Decided May 16, 1913).

## Appeal from Franklin Circuit Court.

1. Constitutional Law—Enactment of Laws.—Section 56 of the Constitution of Kentucky, which provides that no bill shall become a law until it shall have been signed by the presiding officer of each of the two Houses, is mandatory; and a bill which was not signed by the President of the Senate, or approved by the Governor, is not a law.

2. Legislature—Enrolled Bill Not To Be Impeached by Journal.— Where an enrolled bill shows upon its face that it was not signed by the President of the Senate, as required by section 56 of the Constitution, that defect cannot be overcome by a recital in the Senate Journal that the bill had been signed by the President of the Senate.

McQUOWN & BECKHAM for appellant.

JAMES GARNETT, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

## OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Barksdale Hamlett, who was the plaintiff below, was elected Superintendent of Public Instruction for the State of Kentucky at the November election, 1911. He qualified as such officer on January 1st, 1912, by taking the prescribed oath of office and executing a bond in the sum of $25,000 as required by section 4384 of the Kentucky Statutes, and with individuals as surety thereon. The General Assembly of 1912 passed an act providing for the payment of premiums on bonds executed by certain State officers, which reads as follows:

"Par. 1. That whenever a State officer, elected by the voters of the State-at-large, and who is required under the law to give a bond for the faithful discharge of his duties shall have such bond executed by an incorporated surety company authorized to do business in the State of Kentucky as surety, the State shall pay the premium on such bond, and said premium shall become a claim against the State and shall be paid as other claims are paid: Provided, that before any such claim is paid it shall be verified by the affidavit of the officer for whom such bond was executed: Provided, however, that the surety and the amount of the premium to be paid on the

bond shall first be approved by the Governor of Kentucky."

This act was not signed by the president of the Senate, as is required by section 56 of the Constitution, and when it reached the Governor he declined to approve it or to veto it. He did nothing; he simply ignored the bill.

For the purpose of relieving his personal sureties upon his original bond, Hamlett applied for and obtained a bond for $25,000 from the Title Guaranty & Surety Company, of Scranton, Pa., a company authorized to do a surety business in this State, for an agreed premium of $125; and having presented the bill for the premium with the required affidavit attached thereto to the Governor for his approval, and to the Auditor for payment, and both of those officers having refused to recognize the bill as a valid claim against the State, Hamlett brought this action for a writ or mandamus against the Governor commanding him to approve said account, and for a similar writ against the Auditor commanding him to issue his warrant upon the Treasurer for the sum of $125. The circuit judge dismissed the petition, and from that order Hamlett prosecutes this appeal.

Several objections have been assigned to the validity of the act, or bill, above referred to, but we deem it necessary to consider one objection only, to-wit. the failure of the president of the Senate to sign the bill.

Section 56 of the Constitution reads as follows:

"No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall have affixed his signature to any bill he shall suspend all other business, declare that such bill will now be read, and that he will sign the same to the end that it may become a law. The bill shall then be read at length and compared; and, if correctly enrolled. he shall, in presence of the House in open session, and before any other business is entertained, affix his signature, which fact shall be noted in the journal, and the bill immediately sent to the other House. When it reaches the other House, the presiding officer thereof shall immediately suspend all other business, announce the reception of the bill, and the same proceeding shall thereupon be observed in every respect as in the House in which it was first signed. And thereupon the clerk of the latter House shall immediately present the same to the Governor for his signature and approval."

This language is express, sweeping and mandatory. It provides, in express terms, that no bill shall become a law until the same shall have been signed by the presiding officer of each of the two Houses in open session, and after certain specified and formal pre-requisites shall have been complied with.

Appellant relies upon Commissioners of Leavenworth v. Higgenbotham, 17 Kan., 62; Aikan v. Edwards, 55 Kan., 765; State v. Robertson, 41 Kan., 200; and Cottrell v. State, 9 Neb., 129, in support of his contention that the failure of the president of the Senate to sign the bill does not invalidate it.

The doctrine of those cases is well expressed in the following excerpt from Cottrell v. State, *supra*:

"The signature of a presiding officer to a bill is a mere certificate to the Governor that it has passed the requisite number of readings, and been adopted by the constitutional majority of the house over which he presides. (Hull v. Miller, 4 Neb., 503.) And where it appears from the journals that a bill has been approved by the Governor, the failure of the presiding officer to affix his signature thereto will not invalidate the Act, as it will be presumed the Governor had sufficient evidence before him of the passage of the bill at the time he approved the same. The Act, therefore, is of the same validity as though signed by the presiding officer of the Senate."

There are two respects, however, in which the Kansas cases and the Nebraska case are not controlling. In the first place, the Constitution of Kansas, as well as that of Nebraska, is merely declaratory and provides that when a bill has passed the two Houses it shall, within two days thereafter, be signed by the presiding officers of said Houses; and, in the second place, the acts sustained in those cases had been approved by the Governor. Section 56 of the Kentucky Constitution, however, is mandatory in its provisions and not merely declaratory, since it prohibits a bill from becoming a law until it shall have been signed by the presiding officer of each House.

Furthermore, the Governor did not approve the bill; and although he did not veto it or take any action whatever in regard to it, it cannot be successfully claimed that his failure to act aided the bill in any respect. The Constitution provides that the bill must be signed by the presiding officer of each of the two Houses before it is sent to the Governor for his signature and approval. The failure of the Governor to veto, or return the bill to the

House in which it originated with in ten days, as it required by section 88 of the Constitution, cannot operate to validate a bill which was invalid by the express terms of section 56, *supra*.

We are not without authority, however, from other jurisdictions having constitutional provisions similar to our section 56, *supra*. For instance, section 18 of article 4 of the Constitution of Nevada provides that, "All bills and joint resolutions shall be signed by the presiding officers of the respective Houses." In passing upon this section in State v. Glenn, 18 Nev., 34, the court said:

"The signing of the bill by the officers designated in the Constiution is absolutely essential to its existence as a law."

And, in the earlier case of State v. Howell, 26 Nev., 98, the court said:

"The respondent contends that the act is not a law without the attestation of the proper officers of the twentieth session of the Legislature, and bases his refusal to comply with relator's demands upon that fact. The question presented by this contention is the only one to be considered, and it must be determined by the construction placed upon sections 18 and 35 of article 4 of our Constitution. While the question is a new one, and has come before this court in this proceeding for the first time, yet the construction of section 18 has been repeatedly before this court. In all the cases involving a construction of said section 18 it has been invariably held that the last clause of the section, requiring the signatures of the officers named therein, is mandatory, and that the enrolled bill so authenticated is the only and conclusive evidence that it has been legally enacted."

In Scarborough v. Robinson, 81 N. C., 419, the court, in passing on a like question, said:

"In our opinion, the signatures of the presiding officers of the two houses under and by force of the words used in our Constitution, are an essential prerequisite to the existence of the statute—the finishing and perfecting act of legislation—and must be affixed during the session of the General Assembly. An enrolled bill is not that considered and adopted by the concurring action of the two houses, but is a substituted copy transcribed to take the place of the original, and becomes the final expression of the legislative will. Its accuracy is secured by the examination, comparison and report of a committee in each house, and then each house ratifies that

it accepts and adopts the enrolled bill as the embodiment of its own action and the correct expression of its will. Ratification is the act of the house, and its presiding officer in attesting the same, acts on behalf of and by its authority. This is a necessary safeguard against fraud in the insertion of new matter, or the omission or change of existing provisions in the bill, not to be lost sight of or surrendered. Each body gives its direct and positive sanction to the enrolled bill, and its act, when its presiding officer signs; and he is but its agent acting in its stead when he does so. In other words, this is the consummation of legislative action, which is incomplete and inoperative without it. But the Constitution, in express terms, makes the attestation imperative and essential. It declares 'that all bills and resolutions of a legislative nature shall be read three times in each house, before they pass into laws; and shall be signed by the presiding officers of both houses.' * * * The obvious import of the entire section is to declare what is needful to an act of legislation (not all that is needful to it), and should be read as if the words 'before they pass into laws' were the qualification of the concluding sentence also. This is the fair and reasonable interpretation of the section, and such must be its effect. The construction derives support from the very nature and effect of the act of attestation itself, which, as we have seen, is to identify and impress the enrolled bill with the direct and distinct recognition and sanction of the body itself, of which the officer is but the official organ through whom its will is made known. It would seem that the ratification should be subscribed and attested in the presence of the house, and most certainly it cannot be done after the close of the session, at the discretion or pleasure of the officer.''

Section 37 of the Constitution of Missouri is quite similar to section 56 of the Kentucky Constitution, since it provides, among other things, as follows: ''No bill shall become a law until the same shall have been signed by the presiding officer of each of the two Houses in open session,'' &c. In construing said section in State v. Meade, 71 Mo., 241, the Supreme Court of Missouri said:

''We are convinced that the initial clause of the section that 'no bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session,' is mandatory, though it is

quite evident that the mandate of the Constitution would
be obeyed, so far as concerns proper authentication of
the bill, when it receives the signature of the presiding
officers in open session. But we do not regard the other
clauses of the section under review as mandatory; for
it is to be observed that those clauses do not declare that
'no bill shall become a law' if the presiding officers or the
members fail to perform the duties which the residue of
the section imposes, but the only penalty  directly  ex-
pressed is that contained in the initial clause just noted.''

See, also, State v. Kiesewetter, 45 Ohio St. Rep., 254,
and Lynch v. Hutchinson, 219 Ill., 193.

It is insisted, however, by appellant that, although
the enrolled bill does not bear the signature of the pres-
ident of the Senate, the Senate Journal shows that this
bill was signed by the president of the Senate, and that
the journal cannot be contradicted.  Appellant admits
the journal cannot be used for the purpose of invalidat-
ing a law that is otherwise regular upon  its  face, but
claims it is permissible to use the journal for the pur-
pose of sustaining a law. This contention is based prin-
cipally upon the opinion of this court in Lafferty v. Hoff-
man, 99 Ky., 80, where we held that the journal could not
be used to impeach the identity or regularity  of  the
passage of a bill which has been signed by the presiding
officers of both Houses, and approved by the Governor.
It is argued that since the journal cannot be used to im-
peach a bill, it is manifest that it is not needed except to
sustain it; and if the journal be not competent for this
purpose, it is entirely useless in so far as it relates to
the passage of the bill. In the case at bar, however, the
enrolled bill shows its imperfection upon its face, and to
say that the journal of the Senate could be used to estab-
lish a fact which is conclusively contradicted by the bill
itself, would be giving the journal a greater effect than
the enrolled bill. The enrolled bill does not purport to
have been regularly passed and approved; on the con-
trary, it shows upon its face that it is deficient in the two
essential requirements to be found in the signature of
the president of the Senate and the approval of the Gov-
ernor.

In Panghorn v. Young, 32 N. J. L., 29, the court said:

"The Chief Justice thus announced the conclusion of
the court in the former case:

"My general conclusion is that both upon the grounds
of public policy and upon the ancient and well settled

rules of law, the copy of the bill attested in the manner above mentioned and filed in the office of the Secretary of State, *is the conclusive proof* of the enactment and contents of a statute of this State, and that such attested copy *cannot be contradicted by the legislative journals or in any other manner.*"

We can easily see the wisdom of the constitutional rule that requires the presiding officer of each house to sign and certify to a bill before it is sent to the Governor; for, if it were otherwise, it would be an easy matter to change the text of the bill, either intentionally or by accident, without any final check to show that it really expresses the opinion of the legislative bodies that passed it. We have been referred to no case which upholds the validity of an act of the legislature which bears the approving signature of the presiding officer of one House only; and certainly, under the strong language of section 56 of our Constitution, no such bill can be permitted to become a law.

Judgment affirmed.