**D & W AUTO SUPPLY et al., Appellants,**

v.

**DEPARTMENT OF REVENUE and Department for Natural Resources and Environmental Protection, Appellees.**

**CARROLLTON WHOLESALE TOBACCOS, INC., et al., Appellants,**

v.

**DEPARTMENT OF REVENUE and Department for Natural Resources and Environmental Protection, Appellees.**

**BLUEGRASS PROVISIONS CO., INC., et al., Appellants,**

v.

**DEPARTMENT OF REVENUE and Department for Natural Resources and Environmental Protection, Appellees.**

Supreme Court of Kentucky.

May 13, 1980.

A. Norrie Wake, Bradley, Emerson, Wake & Vest, Lexington, for Bluegrass Provisions Co., Inc., Kentucky Meat Processors Association, Inc.

Natalie S. Wilson, William W. Allen, Gess, Mattingly, Saunier & Atchison, Lexington, for D & W Auto Supply, Inc., Estes Auto Parts, Auto & Tractor Parts House, Inc., Bernie's Auto Supply, Inc., and Kentucky Automotive Wholesalers Assoc., Inc.

Robert F. Matthews, R. Van Young, Dorothy Pitt, Greenebaum, Doll & McDonald, Louisville, for Carrollton Wholesale Tobaccos, Inc., Ohio Valley Wholesale Distributors, Inc., Shelbyville Candy & Tobacco, Inc., Axton Candy and Tobacco Co., Inc., Wagner Candy Co., Kentucky Candy & Tobacco Association, Inc., and Kentucky Wholesale Grocers Assoc., Inc.

William S. Riley, William P. Sturm, Dept. of Revenue, Alan L. Harrington, Valerie F. Fravel, Natural Resources and Environmental Protection, Frankfort, for respondents.

STEPHENS, Justice.

The ultimate question to be decided on this appeal is the constitutionality of KRS 224.905–.970, commonly called the "Litter Control Act," which was enacted by the 1978 regular session of the Kentucky General Assembly. In arriving at our decision we must, perforce, reconsider the validity of a long line of decisions of this court which created and nurtured the so-called "enrolled bill" doctrine.

The action was originally brought in the Franklin Circuit Court by various plaintiffs engaged in the sale of a wide range of products that are wrapped or packaged prior to sale. Certain related trade associations were also joined as plaintiffs. These parties sought a declaration of rights and injunctive relief to prevent enforcement of the Act by the Kentucky Department of Revenue and the Kentucky Department for Natural Resources and Environmental Protection. The complaint questioned the constitutionality of the Act and also challenged the method of enforcement by the Department of Revenue.

Following joint, cross motions for summary judgment, the trial court dismissed the complaints and granted summary judgment to the defendants. Plaintiffs appealed to the Kentucky Court of Appeals and defendant-appellees moved for a transfer of the case directly to this court, pursuant to CR 76.18. Following agreement by the appellants, this court granted the motion.

The Act in question is essentially an anti-littering statute. Its stated purposes are to consolidate and promote statewide programs for the reduction of litter and littering; to recover and recycle waste materials; to establish publicity as well as educational and motivational campaigns to build and sustain public awareness of the litter problem; and to create a litter-free ethic among Kentuckians. KRS 224.905, 224.930. The Kentucky Department for Natural Resources and Environmental Protection is given the responsibility of administering the Act. KRS 224.915.

To fund the efforts of state government in carrying out the purposes and mandates of this enactment, the legislature determined that a portion of that cost should be borne by those industries whose products are "reasonably related to the litter problem." KRS 224.955(1). Sixteen specific categories of products are listed as examples of what is intended to be assessed, but, under the specific terms of the Act, the list is not exclusive. KRS 224.955(1)(a)–(p). The actual levy, or assessment, is as follows:

(6)(a) There is hereby imposed upon every person engaged within this state in business as a seller an annual resource conservation, recovery, and beautification assessment, determined pursuant to this section, according to the gross proceeds from sales of designated items;

(b) The assessment shall be three cents (3¢) for each one hundred dollars ($100) of gross proceeds;

KRS 224.955(6)(a), (b). The Kentucky Department of Revenue is charged with the responsibility of collecting this assessment and depositing the proceeds in a "trust and agency fund." KRS 224.965(1).

The Act was initially introduced in the Kentucky House of Representatives and, as it wound its way through the legislative process, was known and identified as House Bill 253. It appears conclusively in the record that when House Bill 253 came before that body for final action, it "passed" by a vote of 48 "ayes" and 43 "nays."

Appellants make several arguments in challenging the validity of the Act: (1) The Act is unconstitutional because it did not receive a majority of 51 votes in the House, as is mandated by section 46 of the Kentucky Constitution for an appropriations bill. (2) The imposition of the tax upon wholesalers and certain manufacturers whose products bear no relation to the litter problem is arbitrary and discriminatory. (3) The classification of products to be assessed is arbitrary, vague and discriminatory. (4) The Kentucky Department of Revenue exceeded its authority in declaring, by administrative fiat, that certain items not listed in the Act are subject to the assessment. Because we agree with appellants that the bill is unconstitutional on the first ground, we need not consider the other contentions made.

 Section 46 of the Kentucky Constitution sets out certain procedures that the legislature must follow before a bill can be considered for final passage. In addition, that section mandates that no bill shall become law unless "it receives the votes of at least two-fifths of the members elected to each House, and a majority of the members voting," with the following exception: "Any act or resolution for the appropriation of money or the creation of debt shall, on its final passage, *receive the votes of a majority of all the members elected to each House.*" Kentucky Constitution sec. 46 (emphasis added).

It is conceded by all parties and clearly established by the record that the Litter Control Act, HB 253 of the 1978 regular session of the Kentucky General Assembly, received only 48 votes on its final passage in the House of Representatives. Since there are 100 members of that House, if the Act is an appropriation, its passage did not comply with a clear constitutional mandate.

It is not seriously argued by the appellees that KRS 224.905–.970 does not contain an appropriation. The Act places an assessment of three cents (3¢) per one hundred dollars ($100) of valuation on all gross proceeds resulting from the sale of designated items. KRS 224.955(6). It specifically directs the Department of Revenue to collect and disburse the monies from a fund "within the state treasury" to implement the purposes of the Act. KRS 224.965(1), (3). In the simplest of terms, an assessment of money is made and its expenditure is directed.

In *Davis v. Steward*, 198 Ky. 248, 248 S.W. 531, 532 (1923), we defined "appropriation" as "the setting apart of a particular sum of money for a specific purpose." A definition also appears in our statutes at KRS 45.010(2), (3), as follows:

(2) 'Appropriation' means an authorization by the general assembly to a budget unit to expend, from public funds, a sum of money not in excess of the sum specified, for the purposes specified in the authorization and under the procedure prescribed in this chapter.

(3) 'Appropriation act' means an act of the general assembly that authorizes the expenditure of public funds.

Under both the legislative definition and the judicial definition, it is clear that the Litter Control Act is an appropriation act and falls within the aegis of section 46 of the Kentucky Constitution.

At this point, logic suggests that the decision of this Court is obvious, viz, since the Act makes an appropriation and since it received less than 51 votes in the House, it is violative of the Kentucky Constitution. However, we are immediately confronted

with the huge stumbling block of what is described as the "enrolled bill" doctrine.

HB 253 was signed by the presiding officers of the House of Representatives, and was certified by the Clerk of the House as conforming with all House procedural rules and, in effect, as conforming with all constitutional requirements. Under the enrolled bill doctrine as it now exists in Kentucky, a court may not look behind such a bill, enrolled and certified by the appropriate officers, to determine if there are any defects.

> From every point of reason, therefore, we are convinced that the enrolled bill, when attested by the presiding officers as the law requires, must be accepted by the courts as the very bill adopted by the legislature, and that its mode of enactment was in conformity to all constitutional requirements. When so authenticated, it imports absolute verity, and is unimpeached by the [legislative] journals.

*Lafferty v. Huffman*, 99 Ky. 80, 35 S.W. 123, 126 (1896). Thus spake Judge Hazelrigg in enunciating the enrolled bill doctrine.

Section 46 of the Kentucky Constitution requires that the final vote on a bill be taken by "yeas" and "nays." In *Lafferty*, passage of the law in question violated this provision, yet the bill was properly enrolled and approved by the governor. In declining to look behind the law to determine the propriety of its enactment, the court enunciated three reasons for adopting the enrolled bill rule. First, the court was reluctant to scrutinize the processes of the legislature, an equal branch of government. Second, reasons of convenience prevailed, which discouraged requiring the legislature to preserve its records and anticipated considerable complex litigation if the court

ruled otherwise. Third, the court acknowledged the poor record-keeping abilities of the General Assembly and expressed a preference for accepting the final bill as enrolled, rather than opening up the records of the legislature. Since 1896, this court has concurred in the reasoning applied in *Lafferty*, regardless of what procedural or constitutional defects have been alleged and proved.[1]

Kentucky is not alone in adherence to the enrolled bill doctrine. At least 19 of our sister states follow the rule which conclusively presumes the validity of a bill passed by the legislature and signed by the legislative officers. See I C. Sands, Sutherland Statutory Construction § 15.03 *et seq.* (4th ed. 1972); 82 C.J.S. *Statutes* § 83 (1953); 72 Am.Jur.2d *Statutes* § 90 (1974); and 4 ALR2d 978 (1949).

Nowhere has the rule been adopted without reason, or as the result of judicial whim. There are four historical bases for the doctrine. (1) An enrolled bill was a "record" and, as such, was not subject to attack at common law. (2) Since the legislature is one of the three branches of government, the courts, being coequal, must indulge in every presumption that legislative acts are valid. (3) When the rule was originally formulated, record-keeping of the legislatures was so inadequate that a balancing of equities required that the final act, the enrolled bill, be given efficacy. (4) There were theories of convenience as expressed by the Kentucky court in *Lafferty*.

The rule is not unanimous in the several states, however, and it has not been without its critics. From an examination of cases and treatises, we can summarize the criticism as follows: (1) Artificial presumptions, especially conclusive ones, are not favored.

---

1. Kentucky cases following *Lafferty* include *Commonwealth v. Shelton*, 99 Ky. 120, 35 S.W. 128 (1896); *Commonwealth v. Hardin County Court*, 99 Ky. 188, 35 S.W. 275 (1896); *Owensboro & N. Ry. Co. v. Barclay's Adm'r*, 102 Ky.16, 43 S.W. 177 (1897); *Waller v. Murray*, Ky., 53 S.W. 25 (1899); *Louisville & N. R. Co. v. Trustees of Elizabethtown Dist. Public School*, Ky., 64 S.W. 974 (1901); *Duncan v. Combs*, 131 Ky. 330, 115 S.W. 222 (1909); *Vogt v. Beauchamp*, 153 Ky. 64, 154 S.W. 393 (1913);

*Hamlett v. McCreary*, 153 Ky. 755, 156 S.W. 410 (1913); *State Board of Charities and Corrections v. Hays*, 190 Ky. 147, 227 S.W. 282 (1921); *Perkins v. Lucas*, 197 Ky. 1, 246 S.W. 150 (1922); *Shanks v. Julian*, 213 Ky. 291, 280 S.W. 1081 (1926); *Golightly v. Bailey*, 218 Ky. 794, 292 S.W. 320 (1929); *McIntyre v. Commonwealth*, 221 Ky. 16, 297 S.W. 931 (1927); *Shannon v. Dean*, 279 Ky. 279, 130 S.W.2d 812 (1939); *Kohler v. Benckart*, Ky., 252 S.W.2d 854 (1952).

(2) Such a rule frequently (as in the present case) produces results which do not accord with facts or constitutional provisions. (3) The rule is conducive to fraud, forgery, corruption and other wrongdoings. (4) Modern automatic and electronic record-keeping devices now used by legislatures remove one of the original reasons for the rule. (5) The rule disregards the primary obligation of the courts to seek the truth and to provide a remedy for a wrong committed by any branch of government.

In light of these considerations, we are convinced that the time has come to re-examine the enrolled bill doctrine.[2]

■ This court is not unmindful of the admonition of the doctrine of *stare decisis*. The maxim is "Stare decisis et non quieta movere," which simply suggests that we stand by precedents and not disturb settled points of law. Yet, this rule is not inflexible, nor is it of such a nature as to require perpetuation of error or illogic. As we stated in *Daniel's Adm'r v. Hoofnel*, 287 Ky. 834, 155 S.W.2d 469, 471–72 (1941) (citations omitted):

> The force of the rule depends upon the nature of the question to be decided and the extent of the disturbance of rights and practices which a change in the interpretation of the law or the course of judicial opinions may create. Cogent considerations are whether there is clear error and urgent reasons 'for neither justice nor wisdom requires a court to go from one doubtful rule to another,' and whether or not the evils of the principle that has been followed will be more injurious than can possibly result from a change.

Certainly, when a theory supporting a rule of law is not grounded on facts, or upon sound logic, or is unjust, or has been discredited by actual experience, it should be discarded, and with it the rule it supports.

■ It is clear to us that the major premise of the *Lafferty* decision, the poor record-keeping of the legislature, has disappeared. Modern equipment and technology are the rule in record-keeping by our General Assembly. Tape recorders, electric typewriters, duplicating machines, recording equipment, printing presses, computers, electronic voting machines, and the like remove all doubts and fears as to the ability of the General Assembly to keep accurate and readily accessible records.

It is also apparent that the "convenience" rule is not appropriate in today's modern and developing judicial philosophy. The fact that the number and complexity of lawsuits may increase is not persuasive if one is mindful that the overriding purpose of our judicial system is to discover the truth and see that justice is done. The existence of difficulties and complexities should not deter this pursuit and we reject any doctrine or presumption that so provides.

Lastly, we address the premise that the equality of the various branches of government requires that we shut our eyes to constitutional failings and other errors of our coparceners in government. We simply do not agree. Section 26 of the Kentucky Constitution provides that any law contrary to the constitution is "void." The proper exercise of judicial authority requires us to recognize any law which is unconstitutional and to declare it void. Without belaboring the point, we believe that under section 228 of the Kentucky Constitution it is our obligation to "support . . . the Constitution of this Commonwealth." We are sworn to see that violations of the constitution—by any person, corporation, state agency or branch of government—are brought to light and corrected. To countenance an artificial rule of law that silences our voices when confronted with violations of our constitution is not acceptable to this court.

We believe that a more reasonable rule is the one which Professor Sutherland de-

---

**2.** The 1980 General Assembly made its own examination of the doctrine, and enacted legislation providing for review of an enrolled bill in the limited situation where the *language* of the bill as enrolled differs materially from the language of the bill as passed by the legislature. House Bill 84.

scribes as the "extrinsic evidence" rule. I Sutherland, *supra*, at § 15.06. Other jurisdictions have embraced this rule, which we hereby adopt as the law of this case and future cases. Under this approach there is a *prima facie* presumption that an enrolled bill is valid, but such presumption may be overcome by clear, satisfactory and convincing evidence establishing that constitutional requirements have not been met.

We therefore overrule *Lafferty v. Huffman* and all other cases following the so-called enrolled bill doctrine, to the extent that there is no longer a conclusive presumption that an enrolled bill is valid. With regard to the present case, we declare KRS 224.905–.970, the "Litter Control Act," void as violative of section 46 of the Kentucky Constitution.

The judgment of the Franklin Circuit Court is reversed, and the cause is remanded to that court with directions to enter a summary judgment in favor of appellants.

All concur, except PALMORE, C. J., who did not sit.